UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMMISSIONS IMPORT EXPORT S.A.,

    *Plaintiff*,

v.

BNP PARIBAS,

    *Defendant*.

Misc. Action No. 14MISC00327



RECEIVED SEP 30 2014 U.S.D.C. S.D.N.Y. CASHIERS

# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND DEPOSITION FROM DEFENDANT BNP PARIBAS

Judd B. Grossman, Esq.
**GROSSMAN LLP**
405 Park Avenue – 10th Floor
New York, New York 10022
jgrossman@grossmanllp.com
(646) 770-7445

*Attorneys for Plaintiff*

Plaintiff Commissions Import Export S.A. ("Plaintiff" or "Commisimpex"), by and through its undersigned counsel, respectfully submits this memorandum of law in support of its motion under Rules 37 and 69 of the Federal Rules of Civil Procedure to compel Defendant BNP Paribas ("BNP") to comply with Plaintiff's subpoena duces tecum (the "Document Subpoena"), dated June 27, 2014, and Plaintiff's deposition subpoena under Rule 30(b)(6) (the "Deposition Subpoena"), dated August 21, 2014.

## PRELIMINARY STATEMENT

In early 2013, after a lengthy and complex international arbitration regarding a debt owed to Commisimpex by the Republic of the Congo (the "Congo" or the "Republic"), Commisimpex succeeded in obtaining a final arbitration award against the Republic for more than € 220 million, plus interest and certain legal expenses and arbitration costs. Later that year, the United States District Court for the District of Columbia confirmed the arbitration award and entered judgment for Commisimpex against the Republic, in the amounts of € 567,184,160.72 and $855,000 USD (reflecting the award, interest, legal expenses and arbitration costs) plus post-judgment interest. Plaintiff has now registered that judgment in this Court, and it is in the process of seeking post-judgment discovery concerning the Congo's assets. In furtherance of that goal, Plaintiff has served two subpoenae on BNP, a French bank with an international presence, seeking documents and deposition testimony related to the Republic's assets held by BNP.

But BNP has sought to frustrate Plaintiff's efforts at every turn. BNP admittedly has not searched for potentially responsive records located beyond its New York Branch; and therefore it has produced no responsive documents. Compounding matters, BNP has refused to make a designation under Rule 30(b)(6) on any of Plaintiff's narrowly tailored areas of examination, including among other things, all steps taken by BNP to comply with the Document Subpoena, offering instead only a barrage of meritless objections. BNP's failure to comply with the

2

subpoenae has hampered Plaintiff's ability to pursue and obtain critical post-judgment discovery. Accordingly, Plaintiff respectfully asks this Court to reject BNP's obstructionist tactics and enter an order compelling BNP to comply forthwith with Plaintiff's targeted discovery requests.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Arbitration Award and Judgment Confirming the Award

In 2009, Commisimpex filed a Request for Arbitration before the International Court of Arbitration of the International Chamber of Commerce against the Republic arising out of an agreement between Commisimpex and the Republic concerning a debt owed by the Republic to Commisimpex. Ultimately, in January 2013, the arbitration proceedings culminated in a final award against the Republic in the amount of € 222,749,598.82, plus interest and certain legal expenses and arbitration costs.

Commisimpex then filed a petition to confirm the arbitration award. *See* Docket No. 1, Case No. 13-CV-713-RLW (D.D.C. May 15, 2013) (Petition). On October 9, 2013, the United States District Court for the District of Columbia granted Commisimpex's motion for a default judgment; confirmed the award pursuant to the Federal Arbitration Act, 9 U.S.C. § 207, and 28 U.S.C. § 1605(a)(6); and entered judgment (the "Judgment") against the Congo, in the amounts of € 567,184,160.72 and $855,000 USD (reflecting the award, interest, legal expenses and arbitration costs) as well as for post-judgment interest. *See* Docket No. 18, Case No. 13-CV-713-RLW (D.D.C. Oct. 9, 2013) (Amended Order and Judgment).

### B.   Plaintiff Attempts to Obtain Post-Judgment Discovery Regarding the Republic's Assets

On June 18, 2014, Plaintiff registered the Judgment in this Court. *See* Docket No. 1, Case No. 1:14-mc-00187-P1 (S.D.N.Y. June 18, 2014) (registration of foreign judgment). A copy of the Judgment is attached as Exhibit A to the Declaration and Rule 37 Certification of Judd B.

3

Grossman In Support Of Plaintiff's Motion to Compel (hereinafter, "Grossman Decl."), filed concurrently with this Memorandum of Law. Commisimpex is now undertaking post-judgment discovery concerning the Congo's assets to aid in Commisimpex's Judgment-enforcement efforts.

BNP is a French bank and financial services company with a presence in 74 countries. *See* http://usa.bnpparibas.com/en/bnp-paribas/bnp-paribas-us/ (last accessed Sept. 29, 2014). "BNP Paribas has been present in the United States since the late 1800s and currently has over 14,000 employees in North America. The region is a key hub for the Bank's global network of 74 countries and nearly 185,000 employees." *Id.* It bills itself as the "number one bank in the eurozone" and a "major player at the international level." *See* http://www.bnpparibas.com/en/about-us/corporate-culture/history (last accessed Sept. 29, 2014).

On June 27, 2014, as part of its post-judgment discovery efforts, Plaintiff served BNP (at its New York branch located at 787 Seventh Avenue, Manhattan) the Document Subpoena seeking documents concerning basic information about the Republic's assets and property held or maintained by BNP and related banking transactions. The Document Subpoena included just four narrowly tailored categories of documents concerning, among other things, the amount and location of the Republic's assets. *See* Grossman Decl., Ex. B (Document Subpoena) at 4. On July 17, 2014, BNP, through counsel (the same law firm that represented the Republic in the underlying artbitration) responded to the Document Subpoena by serving ten pages of objections (the "Document Subpoena Objections") and stating that it "will not produce any Documents in response to the Subpoena." *See* Grossman Decl., Ex. C (Document Subpoena Objections) at 10.

On August 21, 2014, Plaintiff served the Deposition Subpoena on BNP, again at its New York branch, this time to designate a representative to testify at a deposition to be held on September 5, 2014 (the "Deposition Subpoena"). The topics listed for examination at the deposition were identical to those listed in the Document Subpoena; additionally, Plaintiff

4

requested BNP to designate a witness to testify concerning "[a]ll steps taken by BNP to comply with the [Document] Subpoena." *See* Grossman Decl., Ex. D (Deposition Subpoena) at Schedule A, page 3, "Areas For Examination." On August 28, 2014, BNP responded to the deposition subpoena with another eight pages of objections (the "Deposition Subpoena Objections"). *See* Grossman Decl., Ex. E (Deposition Subpoena Objections).

In addition to responding to BNP's litany of objections in a series of letters, *see* Grossman Decl., Ex. F (Letter from Plaintiff's counsel dated July 24, 2014); Ex. G (Letter from BNP's counsel dated August 4, 2014); Ex. H (Letter from Plaintiff's counsel dated August 5, 2014); Ex. I (Letter from Plaintiff's counsel dated August 29, 2014), Plaintiff's counsel also convened a telephonic meet-and-confer conference with BNP's counsel during which time counsel agreed to further limit Plaintiff's requests for the prior five-year period, *see* Grossman Decl., Ex. B (Document Subpoena) at ¶10 and Ex. D (Deposition Subpoena) at ¶10. BNP, however, refused to compromise, confirming that it would not search for any documents outside its New York branch and that it would not designate any witness(es) pursuant to the Deposition Subpoena on any of the areas of examination, including BNP's document-collection efforts under the Document Subpoena. *See* Grossman Decl. at ¶8.

## LEGAL ANALYSIS

### I.   Plaintiff Is Entitled To Post-Judgment Discovery

Judgment-enforcement discovery is governed by Federal Rule of Civil Procedure 69(a)(2), providing that, "[i]n aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person—including the judgment debtor—as provided in the rules or by the procedure of the state where the court is located." As the Supreme Court recently observed, "rules governing discovery in postjudgment execution proceedings are quite permissive. . . . The general rule in the federal system is that, subject to the district court's discretion, '[p]arties may obtain

5

discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.'" *Republic of Argentina v. NML Capital, Ltd.*, ---U.S.---, 134 S. Ct. 2250, 2254, 189 L. Ed. 2d 234 (2014) (quoting Fed. R. Civ. P. 26(b)(1)). Likewise, "New York law entitles judgment creditors to discover 'all matter relevant to the satisfaction of [a] judgment.'" *Id.* (*quoting* N.Y. C.P.L.R. §§ 5223, 5224(a)(1) ("A subpoena duces tecum authorized by this rule and served on a judgment debtor . . . or on a corporation . . . doing business . . . in the state, shall subject the . . . business served to the full disclosure prescribed by [§ 5223] . . . whether the materials sought are in the possession, custody or control of the subpoenaed . . . entity within or without the state.").

"Discovery of a judgment debtor's assets is conducted routinely under the Federal Rules of Civil Procedure," and a judgment creditor "is entitled to discover the identity and location of any of the judgment debtor's assets, wherever located." *First City, Texas Houston, N.A. v. Rafidain Bank*, 281 F.3d 48, 54 (2d Cir. 2002) (internal citations and quotation marks omitted); *see also Banco Central De Paraguay v. Paraguay Humanitarian Foundation, Inc.*, No. 01-Civ-9649, 2006 WL 3456521, at *9 (S.D.N.Y. Nov. 30, 2006) (plaintiff was "entitled as a judgment creditor, under Rule 69, to a very broad inquiry regarding the location and identity of" the debtor's assets). "The fact that a judgment creditor may have difficulty reaching those assets is not determinative of relevance" for purposes of discovery under Rule 69(a)(2). *British Int'l Ins. Co. v. Seguros La Republica, S.A.*, No. 90-CIV-2370 (JFK)(FM), 2000 WL 713057 at *5 (S.D.N.Y. June 2, 2000).

"It is not uncommon to seek asset discovery from third parties, including banks, that possess information pertaining to the judgment debtor's assets." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207-08 (2d Cir. 2012), *aff'd sub nom. NML Capital*, *supra*. "Nor is it unusual for the judgment creditor to seek disclosure related to assets held outside the jurisdiction of the court where the discovery request is made." *Id.* (collecting cases).

In *EM Ltd.*, the Second Circuit affirmed the district court's discovery order compelling two

6

non-party banks, including one Argentinean bank with a New York City branch, to comply with subpoenae seeking information about Argentina's assets located outside the United States. 695 F.3d at 203-04. In holding that "normally broad scope of discovery in aid of execution" were not limited by principles of sovereign immunity," the Second Circuit observed that "in a run-of-the-mill execution proceeding, we have no doubt that the district court would have been within its discretion to order the discovery from third-party banks about the judgment debtor's assets located outside the United States."[1]  695 F.3d at 207-08; see also Eitzen Bulk A/S v. Bank of India, 827 F. Supp. 2d 234, 238-39 (S.D.N.Y. 2011) (granting motion to compel an Indian bank to answer information subpoenae and produce responsive documents regarding a judgment debtor; while bank had focused its responses on information available from within its New York branch, court held that subpoena on the bank's New York branch "reaches all responsive materials within the corporation's control, even if those materials are located outside New York").

As these recent Supreme Court and Second Circuit authorities make clear, Plaintiff is entitled to broad post-judgment discovery from BNP relating to all responsive materials within BNP's control, even if they are located abroad. For these reasons, BNP's refusal to search for responsive documents or information located outside its New York branch, and its failure to designated any witness(es) to testify concerning this information, is improper. BNP should be ordered to comply forthwith with Plaintiff's Document and Deposition Subpoenae.

## II.   BNP's Proffered Objections Do Not Relieve It Of Its Discovery Obligations

### A.   BNP's Non-Compliance Is Not Authorized By Foreign Law or Principles of International Comity

In the three months since Plaintiff served its Document Subpoena, BNP has raised any number of meritless objections, including, among other things, that the subpoenae are an attempt to

---

[1] The Supreme Court "assume[d] without deciding that, as the Government conceded at argument," the Second Circuit's conclusion regarding the broad scope of third-party post-judgment discovery were correct. See NML Capital, 134 S. Ct. at 2255 (citing EM Ltd., 695 F.3d. at 208).

7

"circumvent the provisions of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Mar. 18, 1070, 23 U.S.T. 2555, TIAS No. 7444 codified at 28 U.S.C.§ 1781 (the 'Hague Convention')." *See* Grossman Decl., Ex. G (Letter from BNP's counsel) at 2; *see also* Ex. C (Document Subpoena Objections) at ¶6 (asserting that Plaintiff must seek discovery pursuant to the Hague Convention). But that simply is not the case. The "Supreme Court established that the use of the Hague Convention process is optional, not mandatory, and does not deprive a District Court of the jurisdiction it would otherwise possess 'to order a foreign national party before it to produce evidence physically located within a signatory nation.'" *Wultz v. Bank of China Ltd.*, 910 F. Supp. 2d 548, 552 (S.D.N.Y. 2012) (citing *Société Nationale Industrielle Aérospatiale v. United States Dist. Ct. for the Southern Dist. of Iowa*, 482 U.S. 522, 539-40 (1987)); *see also In re Vivendi Universal, S.A. Sec. Litig.*, 02-CIV-5571 (RJH)(HBP), 2006 WL 3378115 at *2 (S.D.N.Y. Nov. 16, 2006) (collecting cases showing that is "beyond cavil" that "the Hague Convention is not the exclusive means for obtaining discovery from a foreign entity").

While courts may consider principles of "international comity" when "evaluating the propriety of an order directing the production of information or documents in contravention of foreign law,"[2] "[t]he party seeking to displace the Federal Rules of Civil Procedure in favor of the Hague Convention bears the burden of demonstrating that it is more appropriate for the Court to follow the Hague Convention." *In re Vivendi Universal, S.A. Sec. Litig.*, 2006 WL 3378115 at *2. Here, the only foreign law BNP has specifically cited as being "in conflict" with Plaintiff's sought-after discovery is "Article 1 bis of French law No. 68-678 which prohibits document disclosures in connection with a foreign judicial proceeding except pursuant to an enforceable international treaty or agreement." *See* Grossman Decl., Ex. G (Letter from BNP's counsel) at 2 n.1. Unfortunately for BNP, however, "courts in this Circuit have already examined the French bank secrecy law and

---

[2] *Wultz*, 910 F. Supp. 2d at 552 (describing factors courts use to weigh the respective interests of the foreign nation and the requesting nation).

8

blocking statute, and denied their applicability to preclude discovery. . . . Similarly, courts have refused to give effect to the French blocking statute, French Law No. 68–678." *Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 220 (E.D.N.Y. 2007); *see also In re Vivendi Universal, S.A. Sec.*, 2006 WL 3378115 at *3 ("majority of courts that have examined the issue have held that France has little interest in the enforcement of its Blocking statute"); *Bodner v. Paribas*, 202 F.R.D. 370, 375 (E.D.N.Y. 2000) (where discovery ordered was limited, did not pose a significant hardship to defendants, and court supervision of discovery could address defendants' concerns, court would not require resort to Hague Convention, particularly where "French laws cited by defendants do not . . . present a compelling, competing French national interest" and "courts have uniformly declined to give effect to the French Blocking Statute, or to hold that the existence of the statute requires that discovery of French defendants take place under the Hague Convention").[3]

## B. Neither the Separate Entity Doctrine Nor *Daimler* Bars Plaintiff's Discovery

BNP's reliance on New York's "separate entity" doctrine does not aid them in escaping their discovery obligations here. *See* Grossman Decl., Ex. G (Letter from BNP's counsel) at 2. This outdated doctrine has recognized that "each branch of a bank" may be treated "as a separate entity, in no way concerned with accounts maintained by depositors in other branches or at a home office." *CE Int'l Res. Holdings, LLC v. S.A. Minerals Ltd. P'ship*, 12-CV-08087 (CM) (SN), 2013

---

[3] One factor in a comity analysis is "the good faith of the party resisting discovery." *Wultz v. Bank of China Ltd.*, 910 F. Supp. 2d 548, 553 (S.D.N.Y. 2012). Here, it is noteworthy that BNP's counsel is the same law firm that represented the Congo in the underlying arbitration. Plaintiff several times has raised the potential, if not ongoing conflict resulting from this dual representation. *See also Kensington Int'l Ltd. v. Republic of Congo*, 2007 U.S. Dist. LEXIS 63115, at *33 (S.D.N.Y. August 23, 2007) (sanctioning Cleary Gottlieb for its "bad faith" attempts to "interfere with the legitimate post-judgment discovery process" directed at the Congo). *See* Grossman Decl., Ex. F at 1; Ex. H at 1-2; Ex. I at 1 (Letters from Plaintiff's counsel). But BNP has rejected Plaintiff's requests to relieve their counsel from this engagement. *See* Grossman Decl., Ex. G (Letter from BNP's counsel) at 1. Accordingly, Plaintiff files this motion without waiving and expressly reserving its right to seek such relief.

WL 2661037 at *16 (S.D.N.Y. June 12, 2013) (emphasis original) (internal citations and quotation marks omitted). "The rule dates back to an age when electronic data bases were in their infancy, and it was intended to prevent the chaos that might result if an attachment order were served on one branch of a bank unbeknownst to another branch which then allowed the judgment debtor to transfer funds." *Tiffany (NJ) LLC v. Dong*, 11 Civ. 2183 (GBD) (FM), 2013 WL 4046380 at *10 (S.D.N.Y. Aug. 9, 2013).

Whatever the continued viability of this doctrine, it simply is inapplicable here because, "where the remedy sought is an injunction or a subpoena, the separate entity rule has not barred enforcement; courts have held that only personal jurisdiction over the legal entity, the bank and its branches, is necessary." *CE Int'l Res. Holdings, LLC v. S.A. Minerals Ltd. P'ship*, 2013 WL 2661037 at *17 (collecting cases and reasoning that "Application of the separate entity rule in the discovery context would be inconsistent with the underlying policy justifications for the rule, which are to avoid confusion and prevent competing claims over assets held in a foreign branch"). Thus, the *CE International* court concluded that "the separate entity is not, in itself, a legitimate basis for" a bank to avoid compliance with a subpoena seeking documents held out of state and even overseas. *Id.* at *17-18 ("Deutsche Bank cannot use this New York rule as a shield from disclosure"); *see also Tiffany (NJ) LLC v. Forbse*, 11 CIV. 4976 NRB, 2012 WL 1918866 at *11 and n.9 (S.D.N.Y. May 23, 2012) ("Because Tiffany is not seeking a prejudgment attachment under the C.P.L.R., the separate entity rule is simply not relevant at this stage of the litigation"); *Eitzen Bulk*, 827 F. Supp. 2d at 239-40 (finding that the separate-entity rule did not bar enforcement of a post-judgment subpoena duces tecum served on New York branch of the Bank of India because court had personal jurisdiction over bank, and noting that "Bank of India does not explain how a rule that requires separate treatment for attachment purposes also requires separate treatment for subpoena purposes, particularly in the face of a contrary, and plainly applicable, state [rule] of procedure,"

10

C.P.L.R. § 5224(a–1)); *Gucci Am., Inc. v. Weixing Li*, 10-CIV-4974 (RJS), 2011 WL 6156936 at *12 and n.6 (S.D.N.Y. Aug. 23, 2011) (granting motion to compel non-party Bank of China to produce responsive documents located in any of its China branches because separate-entity rule applies only "for attachment purposes").

There are no jurisdictional impediments to requiring BNP to comply with the subpoenae because it is settled that the presence of BNP's New York branch is sufficient to subject the bank to jurisdiction here. *See Eitzen Bulk A/S v. Bank of India*, 827 F. Supp. 2d 234, 239 (S.D.N.Y. 2011) ("Bank of India is subject to general personal jurisdiction in New York, based on its continuous operation of a branch here."); *Trabucco v. Intesa Sanpaolo, S.p.A.*, 695 F.Supp.2d 98, 105 (S.D.N.Y. 2010) (general personal jurisdiction based on bank's parent corporation operating a branch office in New York and regularly engaging in business in New York); *Forbse*, 2012 WL 1918866 at *3 ("New York branches are not subsidiaries of a foreign parent company" but rather are "branches of the same corporate entities as their counterparts in China" so the court "has personal jurisdiction over the Banks as corporate entities").

Accordingly, contrary to BNP's assertions (*see* Grossman Decl., Ex. G (Letter from BNP's counsel) at 2-3 and Ex. C (Document Subpoena Objections) at ¶2), the recent Supreme Court decision in *Daimler* does not alter BNP's discovery obligations here. *See generally Daimler AG v. Bauman*, ---U.S.---, 134 S. Ct. 746 (2014). *Daimler* involved a question of personal jurisdiction over a defendant against whom claims were actually being asserted and who actually faced potential liability. Here, in contrast, BNP is a non-party to the underlying dispute between Plaintiff and the Republic, and BNP's own liability and assets are not at stake in the underlying Judgment, significantly altering the equation in terms of the "traditional notions of fair play and substantial justice" that have long informed the federal courts' jurisdictional rulings. *See* 134 S.Ct. at 754.

Moreover, *Daimler* examined the general personal jurisdiction of California courts in the context of an action by Argentinian residents against a German company based solely on the limited irrelevant California contacts of the German company's indirect subsidiary (a Delaware LLC whose principal place of business was New Jersey). *Id.* at 761. *Daimler* rejected a conception of general jurisdiction that would "subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate" or whenever their "in-forum contacts can be said to be in some sense 'continuous and systematic,'" and clarified that the standard was whether a corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* at 760-61 (internal citations omitted, quotation marks and alterations original). Here, however, BNP's New York branch is not merely an indirect subsidiary or purported agent of BNP; rather, it is part of BNP itself. So BNP is clearly "at home" in New York, where it operates a major branch and describes North America as a "key hub for the Bank's global network." *See* http://usa.bnpparibas.com/en/bnp-paribas/bnp-paribas-us/. For jurisdictional purposes, therefore, BNP, by virtue of its branch, is "comparable to a domestic enterprise" in New York. *Id.* at 758 n.11.

### C. BNP's Remaining Objections are Meritless

The remainder of BNP's objections include a litany of boilerplate responses, but they have set forth no specifics regarding issues such as privilege or confidentiality concerns (*see, e.g.,* Grossman Decl., Ex. C (Document Subpoena Objections) at ¶¶ 9-11) or the burden or expense it may incur in complying with the subpoenae (*see, e.g.,* Grossman Decl., Ex. E (Deposition Subpoena Objections) at ¶¶ 2, 10). The subpoena was directed to BNP Paribas in its entirety, which is presumed to have custody and control of its own records. *See Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 148-149 (S.D.N.Y. 2011) (concluding that the documents requested were in the custody and control of the subpoenaed banks, despite assertions that the banks' New York

and China branches had separate computer systems and New York personnel could not compel the China headquarters to produce account information, because the subpoena was directed to the banks as a whole, not solely the New York branches, and the banks did not assert that they lacked control over documents in China); *Forbse*, 2012 WL 1918866 at *3 (Chinese banks failed to rebut the "presumption that a corporation is in the possession and control of its own books and records" where banks "have not provided any evidence to suggest that the larger corporate entities do not have custody over the records").

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant its motion to compel BNP to comply with the Document Subpoena and the Deposition Subpoena.

Dated: September 30, 2014
      New York, New York

                                            Respectfully Submitted,

                                            **GROSSMAN LLP**

                                            By: _____
                                                Judd B. Grossman, Esq.
                                                405 Park Avenue – 10th Floor
                                                New York, New York 10022
                                                jgrossman@grossmanllp.com
                                                (t): (646) 770-7445

                                                *Attorneys for Plaintiff*